IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | SEALED INDICTMENT |
| v. | Criminal No. 25-163 (CVR) |
| [1] EDGARDO NAVARRO SUAREZ, (Counts 1-7; 10-12) | Violations: |
| [2] RICARDO LUIS NAVARRO SUAREZ, (Counts 1-9) | Count 1<br>Wire Fraud Conspiracy Affecting a Financial Institution<br>18 U.S.C. §§ 1343 and 1349 |
| [3] RAMON J. VALENTIN MONTALVO, (Counts 1-7) | Counts 2-7<br>Bank Bribery<br>18 U.S.C. § 215(a) |
| [4] JCA DEVELOPMENT, INC., (Count 1) | |
| [5] JCA PACKAGING GROUP, INC., (Count 1) | Counts 8-10<br>Concealment Money Laundering<br>18 U.S.C. § 1956(a)(1)(B)(i) |
| [6] RVIP GROUP CORP., (Count 1) | Counts 11-12<br>Transaction Money Laundering<br>18 U.S.C. § 1957 |
| and | Forfeiture: |
| [7] JCA INDUSTRIAL SUPPLY CORP. (Count 1) | 18 U.S.C. § 982;<br>21 U.S.C. § 853;<br>28 U.S.C. § 2461 |
| Defendants. | (Twelve Counts) |

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. The United States Small Business Administration ("SBA") was a federal agency aimed at supporting small businesses and aiding economic recovery in disaster-

affected communities by providing government-backed loans through banks and other lenders.

2.  The Coronavirus Aid, Relief, and Economic Security (CARES) Act, enacted in 2020, provided emergency financial assistance to Americans impacted by the COVID-19 pandemic, including authorizing the SBA to issue loans to small businesses and non-profit entities facing revenue losses.

*The Economic Injury Disaster Loan Program*

3.  One form of loan assistance was the Economic Injury Disaster Loan ("EIDL") program, which provided assistance for certain businesses negatively affected by the COVID-19 pandemic. To qualify for an EIDL loan, a business had to, among other requirements, be in operation prior to February 1, 2020.

4.  Applicants for EIDL loans used an SBA online portal to submit their application materials. The SBA servers that processed the EIDL loan applications were based outside of Puerto Rico.

5.  EIDL applicants had to certify that the information in the application was true and correct, under penalty of perjury and applicable criminal statutes. Applicants provided information relating to the size and ownership of the affected business entity, and other information about the relevant business for the 12 months prior to COVID-19 impacting the national economy. The information included the number of employees in the business, the gross business revenues realized, and the cost of goods sold. This information was used by SBA systems to calculate the amount of money the applicant was eligible to receive.

6. Non-profit applicants and non-agricultural for-profit applicants were both generally eligible to receive an EIDL loan of up to $150,000, with a 30-year scheduled repayment, deferred for 12 months. Some applicants were also eligible for advance funds of up to $15,000.

7. Any funds paid by the SBA under an EIDL loan were processed and issued from various locations in the continental United States, including Iowa, Colorado, and Virginia, and sent to the applicant borrower's financial institution.

8. Pursuant to the provisions governing the EIDL program, loan proceeds could only be used by the affected business receiving EIDL loans for certain permissible expenses. The loans could be used by the business to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

9. After April 6, 2021, some EIDL applicants became eligible to apply for additional funds pursuant to changes in how the SBA calculated eligibility for EIDL relief. The SBA allowed EIDL recipients to submit modified applications to take advantage of the program changes. The modified applications were submitted and processed by the SBA in the same way as the original applications. If the SBA approved the modified loan application, it disbursed additional funds to the borrower.

*The Paycheck Protection Program*

10. Another form of assistance provided by the CARES Act was forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

11. To obtain a PPP loan a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The application required the small business to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the loan. The small business was also required to provide, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

12. PPP loan applications were processed by participating financial institutions. If an application was approved, the participating lender funded the loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

13. PPP loan proceeds could only be used by the business on certain permissible expenses, such as payroll costs, interest on mortgages, rent and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on the allowable expenses within a designated period of time and used a certain percentage of the PPP loan proceeds towards payroll expenses.

14. PPP borrowers who sought loan forgiveness were required to submit a forgiveness application. The application required the borrower to state how much of the PPP loan proceeds were spent on payroll expenses. The application also required the borrower to state its number of employees at the time of receiving the PPP loan and at the time of seeking forgiveness.

*Relevant People and Entities*

15. Co-conspirator 1 ("CC1"), not charged herein, was an employee and agent of Bank 1 who had access to Bank 1's internal systems, including those used for processing PPP loans, and authority to process such applications as part of his duties with Bank 1.

16. Lansar Group Company, LLC, was a Puerto Rico limited liability company owned and controlled by CC1.

17. Top Notch Group Company Corporation, was a Puerto Rico corporation owned and controlled by CC1.

18. Co-conspirator 2 ("CC2"), not charged herein, was a businessman who obtained fraudulent loans for himself and in the names of businesses he owned and controlled.

19. Outsourcing Group, LLC, was a Puerto Rico limited liability company owned and controlled by CC2.

20. Outsourcing Group Services Corporation, was a Puerto Rico corporation owned and controlled by CC2.

21. [4] JCA DEVELOPMENT, INC. was a Puerto Rico corporation established December 18, 2013, which was owned and controlled by [1] EDGARDO NAVARRO SUAREZ.

22. [5] JCA PACKAGING GROUP, INC. was a Puerto Rico corporation established December 3, 2010, which was owned and controlled by [1] EDGARDO NAVARRO SUAREZ.

23. [6] RVIP GROUP CORP. was a Puerto Rico corporation established January 24, 2013, which was owned and controlled by [2] RICARDO LUIS NAVARRO SUAREZ.

24. [7] JCA INDUSTRIAL SUPPLY CORP. was a Puerto Rico corporation established March 26, 2001, which was owned and controlled by [1] EDGARDO NAVARRO SUAREZ. Its status was terminated as of December 21, 2018.

25. Bank 1 was a San Juan, Puerto Rico-based financial institution, as defined in Title 18, *United States Code*, § 20, and an approved SBA lender.

## COUNT ONE
(Conspiracy to Commit Wire Fraud, Title 18, *United States Code*, §§ 1343 and 1349)

26. The factual allegations of paragraphs 1 through 25 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

*The Conspiracy*

27. Beginning no later than in or about May 2020, through at least November 2021, the exact dates being unknown, in the District of Puerto Rico, and elsewhere, the defendants:

[1] EDGARDO NAVARRO SUAREZ,
[2] RICARDO LUIS NAVARRO SUAREZ,
[3] RAMON J. VALENTIN MONTALVO,
[4] JCA DEVELOPMENT, INC.,
[5] JCA PACKAGING GROUP, INC.,
[6] RVIP GROUP CORP., and
[7] JCA INDUSTRIAL SUPPLY CORP.

and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree to devise a scheme and artifice to defraud and to obtain money and property from the United States Small Business Administration and Bank 1, a financial institution as defined by Title 18, *United States Code*, § 20, by means of material false and fraudulent pretenses, representations and promises; and for the purpose of executing the scheme and artifice, transmitted and caused to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, *United States Code*, § 1343.

*Objects of the Conspiracy*

28.  The objects of the conspiracy were for the co-conspirators to unjustly enrich themselves by obtaining PPP and EIDL loan proceeds under materially false pretenses, to misuse PPP and EIDL proceeds for unauthorized expenditures, and to prevent detection of the conspiracy.

*Manner and Means of the Conspiracy*

29. The manner and means by which the defendants and their co-conspirators would accomplish and further the objects of the conspiracy, among others, included the following:

   a. It was part of the manner and means of the conspiracy that defendants and their co-conspirators would submit and cause to be submitted fraudulent EIDL and PPP applications that contained materially false and fraudulent information and supporting documentation, at times including false and fictitious tax documents, payroll records, bank records, and other documents.

   b. It was part of the manner and means of the conspiracy that defendants and their co-conspirators would recruit others to fraudulently obtain EIDL and PPP relief.

   c. It was part of the manner and means of the conspiracy that defendants and their co-conspirators would obtain the personal identifying information of others for use in applying for PPP and EIDL relief.

   d. It was part of the manner and means of the conspiracy that defendants and their co-conspirators would make, and cause to be made, false statements to the SBA and Bank 1 in connection with the fraudulent applications for PPP and EIDL relief, including false representations regarding 2019 income, the number of employees to whom wages had been paid, and false certifications that the loans would be used for permissible purposes.

e. It was part of the manner and means of the conspiracy that CC1, an employee of Bank 1 responsible for processing PPP loan applications, processed and submitted fraudulent PPP applications to the SBA through Bank 1's systems. CC1 also facilitated the opening of accounts at Bank 1 which would be used to receive the proceeds of the fraudulent PPP applications.

f. It was part of the manner and means of the conspiracy that defendants and their co-conspirators would use the fraudulently obtained EIDL and PPP proceeds to engage in financial transactions designed to create the appearance of being bona fide business expenditures, including payroll expenses, in order to disguise the true nature of the financial transactions.

g. It was part of the manner and means of the conspiracy that defendants and their co-conspirators would direct the recipients of the fraudulently obtained EIDL and PPP proceeds to remit a certain amount of the proceeds to co-conspirators.

h. It was part of the manner and means of the conspiracy that defendants and their co-conspirators would corruptly give, offer, and promise payments to CC1, with intent to influence and reward CC1 in connection with the submission and processing of PPP applications and the deposit and disbursement of PPP and EIDL funds into accounts at Bank 1.

i. It was part of the manner and means of the conspiracy that CC1 used Lansar Group Company, LLC and Top Notch Group Company Corporation to conceal payments received from co-conspirators.

j.  It was part of the manner and means of the conspiracy that defendants and their co-conspirators utilized fraudulently obtained EIDL and PPP proceeds to benefit themselves and others, including for expenses prohibited under the requirements of the PPP and EIDL programs.

k.  It was part of the manner and means of the conspiracy that the defendants and their co-conspirators submitted and caused the submission of at least 26 EIDL and PPP applications seeking a total of at least $2,238,747 in EIDL and PPP proceeds from the SBA and Bank 1.

l.  It was part of the manner and means of the conspiracy that the defendants and their co-conspirators corruptly gave, offered, and promised at least $69,500 in payments to CC1 to influence and reward CC1 in connection with his assistance as an employee of Bank 1 with the processing and disbursement of PPP and EIDL funds.

m.  It was part of the manner and means of the conspiracy that the defendants and their co-conspirators submitted PPP loan forgiveness applications which contained false and fraudulent information.

30.  In furtherance of the conspiracy and to achieve its objectives, one or more members of the conspiracy committed, and willfully caused others to commit the following acts, among others, in the District of Puerto Rico, and elsewhere:

a.  The following EIDL loan applications were electronically submitted, and caused to be submitted, via interstate wire communication using the SBA online portal, as set forth below:

| Applicant Name | Date of Wire (Application Creation Date) | Amount |
|---|---|---|
| [4] JCA DEVELOPMENT, INC. | June 24, 2020 | $10,000.00 |
| [5] JCA PACKAGING GROUP, INC. | June 24, 2020 | $149,900.00 |
| [4] JCA DEVELOPMENT, INC. | June 24, 2020 | $149,900.00 |
| [7] JCA INDUSTRIAL SUPPLY CORP. | July 7, 2020 | $10,000.00 |
| [7] JCA INDUSTRIAL SUPPLY CORP. | July 7, 2020 | $82,400.00 |
| [5] JCA PACKAGING GROUP, INC. | May 13, 2021 | $144,800.00 |
| [5] JCA PACKAGING GROUP, INC. | May 13, 2021 | $10,000.00 |
| [4] JCA DEVELOPMENT, INC. | May 13, 2021 | $50,000.00 |
| [4] JCA DEVELOPMENT, INC. | September 4, 2021 | $5,000.00 |
| [4] JCA DEVELOPMENT, INC. | November 9, 2021 | $293,400.00 |
| **TOTALS** | **10 EIDL LOANS AND ADVANCES** | **$905,400.00** |

b.  PPP loan applications were electronically submitted, and caused to be submitted, via interstate wire communication as set forth below:

| Applicant Name/Initials | Date of Wire (Electronic Transmission Date) | Amount | Forgiveness Status |
|---|---|---|---|
| G.D.C.M. | July 22, 2020 | $20,400.00 | Forgiven |
| [1] EDGARDO NAVARRO SUAREZ | July 22, 2020 | $20,500.00 | Forgiven |
| [2] RICARDO LUIS NAVARRO SUAREZ | July 27, 2020 | $20,600.00 | Forgiven |
| CC2 | July 27, 2020 | $20,800.00 | Forgiven |

| Applicant Name/Initials | Date of Wire (Electronic Transmission Date) | Amount | Forgiveness Status |
|---|---|---|---|
| [2] RICARDO LUIS NAVARRO SUAREZ | January 21, 2021 | $20,600.00 | Forgiven |
| CC2 | January 21, 2021 | $20,800.00 | Forgiven |
| [4] JCA DEVELOPMENT, INC. | February 4, 2021 | $143,645.00 | Forgiven |
| [5] JCA PACKAGING GROUP, INC. | February 4, 2021 | $145,625.00 | Forgiven |
| [1] EDGARDO NAVARRO SUAREZ | February 19, 2021 | $20,500.00 | Forgiven |
| G.D.C.M. | February 27, 2021 | $20,400.00 | Forgiven |
| Outsourcing Group, LLC | March 9, 2021 | $147,708.00 | Forgiven |
| [6] RVIP GROUP CORP. | April 9, 2021 | $147,708.00 | Forgiven |
| Outsourcing Services Group Corp. | April 14, 2021 | $147,083.00 | Forgiven |
| [4] JCA DEVELOPMENT, INC. | April 27, 2021 | $143,645.00 | Forgiven |
| [5] JCA PACKAGING GROUP, INC. | April 27, 2021 | $145,625.00 | Forgiven |
| Outsourcing Group, LLC | May 17, 2021 | $147,708.00 | Forgiven |
| TOTALS | 16 PPP LOANS | $1,333,347.00 | |

All in violation of Title 18, *United States Code*, §§ 1343 and 1349.

### COUNTS TWO through SEVEN
(Bank Bribery, Title 18, *United States Code*, § 215(a))

On or about the dates listed below, in the District of Puerto Rico, the defendants:

[1] EDGARDO NAVARRO SUAREZ,

[2] RICARDO LUIS NAVARRO SUAREZ, and

[3] RAMON J. VALENTIN MONTALVO,

corruptly gave, offered, and promised payments of more than $1,000 to CC1 with the intent to influence and reward CC1, an employee and agent of Bank 1, a financial institution as defined under Title 18, *United States Code*, § 20, in connection with transactions and the business of Bank 1, specifically the submission and processing of PPP applications and the deposit and disbursement of PPP and EIDL funds into accounts at Bank 1, as described below:

| Count | Date | Description |
|---|---|---|
| 2 | June 30, 2020 | $2,000 check from [1] EDGARDO NAVARRO SUAREZ's Banco Santander Puerto Rico account ending in 1885, endorsed by Lansar Group Company, LLC |
| 3 | July 10, 2020 | $8,000 check from [7] JCA INDUSTRIAL SUPPLY CORP.'s FirstBank Puerto Rico account ending in 1132, endorsed by Top Notch Group Company Corporation |
| 4 | July 24, 2020 | $6,000 check from [1] EDGARDO NAVARRO SUAREZ's Banco Santander Puerto Rico account ending in 1885, endorsed by CC1 |
| 5 | January 10, 2021 | $3,500 check from [7] JCA INDUSTRIAL SUPPLY CORP.'s FirstBank Puerto Rico account ending in 1132, endorsed by CC1 |
| 6 | February 23, 2021 | $25,000 check from [4] JCA DEVELOPMENT, INC.'s Banco Santander Puerto Rico account ending in 6043 to Lansar Group Company, LLC |
| 7 | February 23, 2021 | $25,000 check from [4] JCA DEVELOPMENT, INC.'s Banco Popular de Puerto Rico account ending in 1925 to Lansar Group Company, LLC |

All in violation of Title 18, *United States Code*, § 215(a), and *Pinkerton v. United States*, 328 U.S. 640 (1946) (co-conspirator liability).

## COUNTS EIGHT through TEN
(Concealment Money Laundering, Title 18, *United States Code*, § 1956(a)(1)(B)(i))

On or about the dates listed below, in the District of Puerto Rico and elsewhere within the jurisdiction of this Court, the defendants listed below did knowingly and intentionally conduct, and attempt to conduct, financial transactions involving monetary instruments affecting interstate and foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is, wire fraud conspiracy in violation of Title 18, *United States Code*, § 1349, as listed below, knowing that the monetary instruments and funds involved in the transactions represented the proceeds of some form of unlawful activity and knowing that such transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

| Count | Date | Defendant | Amount | Description |
|---|---|---|---|---|
| 8 | May 1, 2021 | [2] RICARDO LUIS NAVARRO SUAREZ | $50,000 | Check 0005 from [6] RVIP GROUP CORP.'s Oriental Bank account ending in 7555 used to purchase Oriental Bank Manager's Check No. 220656645 |
| 9 | May 3, 2021 | [2] RICARDO LUIS NAVARRO SUAREZ | $80,000 | Oriental Bank Manager's Check No. 220656645, used to purchase property in Humacao, Puerto Rico |
| 10 | October 7, 2021 | [1] EDGARDO NAVARRO SUAREZ | $141,302.87 | Oriental Bank Manager's Check No. 226424181 used |

| Count | Date | Defendant | Amount | Description |
|---|---|---|---|---|
| | | | | to purchase property in Caguas, Puerto Rico |

All in violation of Title 18, *United States Code*, § 1956(a)(1)(B)(i).

## COUNTS ELEVEN and TWELVE
(Monetary Transaction Money Laundering, Title 18, *United States Code*, § 1957)

On or about each of the dates set forth below, within the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court, the defendant, [1] EDGARDO NAVARRO SUAREZ, knowingly engaged and attempted to engage in the following monetary transactions in criminally derived property of a value greater than $10,000 and derived from specified unlawful activity, that is, wire fraud conspiracy in violation of Title 18, *United States Code*, §§ 1343 and 1349:

| Count | Date | Amount | Description |
|---|---|---|---|
| 11 | May 19, 2021 | $18,000 | Check 201 from [5] JCA PACKAGING GROUP, INC.'s Oriental Bank account ending in 2609 to Realty Consultants |
| 12 | August 19, 2021 | $100,000 | Transfer from [5] JCA PACKAGING GROUP, INC.'s Oriental Bank account ending in 2609 to [4] JCA DEVELOPMENT, INC.'s Oriental Bank account ending in 0490 |

All in violation of Title 18, *United States Code*, § 1957.

## FORFEITURE NOTICE
(Title 18, *United States Code*, § 982)

*Wire Fraud and Bank Bribery*

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, *United States Code*, § 982(a)(2), in the event of any defendant's conviction for the offenses set forth in Counts ONE through SEVEN of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation.

3. The property to be forfeited includes, but is not limited to, a sum of money in United States currency representing the amount of property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of said offenses, and the following specific property:

    a. All right, title, and interest in property located at Carr. 1, Km 29.5, Int Calle Abeto Bo Rio Canas, Caguas, Puerto Rico 00725, together with all improvements and appurtenances;

    b. All right, title, and interest in property located at 170 Palmas Dr. E, La Jolla de Palmas Condominium I, Apt C16, Humacao, Puerto Rico 00791-6330, together with all improvements and appurtenances; and

c. All right, title, and interest in property located at Palmas del Mar Crescent Beach #216 in Humacao, Puerto Rico, 00791, together with all improvements and appurtenances.

*Money Laundering*

4. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, *United States Code*, § 982(a)(1), in the event of any defendant's conviction for the offenses set forth in Counts EIGHT through TWELVE of this Indictment.

5. Any defendant so convicted shall forfeit to the United States of America all property, real or personal, involved in such offenses, and all property traceable to such property. The property to be forfeited includes, but is not limited to, a sum of money in United States currency representing the amount of property involved in the commission of said offenses, and the following specific property:

a. All right, title, and interest in property located at Carr. 1, Km 29.5, Int. Calle Abeto Bo Rio Canas, Caguas, Puerto Rico 00725, together with all improvements and appurtenances;

b. All right, title, and interest in property located at 170 Palmas Dr. E, La Jolla de Palmas Condominium I, Apt C16, Humacao, Puerto Rico 00791-6330, together with all improvements and appurtenances; and

  c. All right, title, and interest in property located at Palmas del Mar Crescent Beach #216 in Humacao, Puerto Rico, 00791, together with all improvements and appurtenances.

<em>Substitute Assets Provision</em>

  6. Pursuant to Title 21, *United States Code*, § 853(p), as incorporated by Title 18, *United States Code*, § 982(b)(1), and Title 18, *United States Code*, § 982(b)(2), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                TRUE BILL

                FOREPERSON
                Date: 03/27/2025

W. STEPHEN MULDROW
United States Attorney

Daniel J. Olinghouse
Assistant United States Attorney

Timothy R. Henwood
Assistant United States Attorney
Chief, Criminal Division